MARTIN D. THOMAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100874. Promulgated June 17, 1941.

*John M. Hudson, Esq.*, and *Samuel E. Gawne, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

738

OPINION.

Van Fossan: Respondent held that petitioner received taxable income in the year 1937 to the extent of the value of 776 shares of the capital stock of the Ironwood Amusement Corporation. It is agreed that the shares were not actually issued or received in 1937. On brief respondent contends that petitioner constructively received the 776 shares in the taxable year. Petitioner contends that neither the shares nor the value of the shares was actually or constructively received in 1937. We sustain the petitioner.

That this is not a case for the application of the doctrine of constructive receipt seems clear. The Board said in *John A. Brander*, 3 B. T. A. 231, that the doctrine of constructive receipt should not be applied lightly. We adhere to that view and believe that to apply the doctrine here as to the receipt of the shares would do violence to a proper interpretation of the law and the present facts. By reason of the injunction the shares could not have been issued to petitioner in the taxable year. They were not issued until 1939. In 1937 they were not in any sense subject to his command and disposition.

We hold the same opinion as to the respondent's finding that petitioner received the value of the shares in the taxable year. This holding was predicated on the resolution of the company recognizing that petitioner had qualified to receive the stock due him as compensation and granting him the right to "participate in the affairs and share in the profits and losses of [the company] as though he were the owner of 15%" of the issued capital stock, and on the further fact that petitioner received proportionate distributions of profits which he returned as dividends.

That the distributions received by petitioner were not dividends on stock is clear. No stock had been issued to him and he was not a stockholder in the company. The fact that they were erroneously called dividends in petitioner's return is not controlling.

It will be recalled that the compensation to petitioner was to be 15 percent of the issued capital stock of the company at the time of completion of performance of the contract. The resolution on which respondent chiefly relies recited that, by reason of the pendency of the injunction suit questioning the legality of the issue of certain of its shares, the number of shares to which petitioner was entitled under the agreement could not be determined at that time and that in any event the certificates could not be issued because of the restraining order.

The further part of the resolution, while nominally granting petitioner the right to participate in the affairs and share in the profits and losses "as though he were the owner of 15% in number and amount of the issued capital stock" amounted only to granting of compensation for services rendered in the amount of 15 percent of the company's profits. Had there been no net profits in 1937 there would have been no payment to petitioner.

The right to participate in the affairs of the company, without the right to enforce his views by voting in corporate meetings, was an empty gesture. It was not an asset which could be sold or transferred. Moreover, the record is that petitioner had attended most of the meetings all during the term of his contract. To hold that petitioner in 1937 received the equivalent in value of the 776 shares of stock, i. e., that the rights conferred by the resolution were tantamount to ownership of such stock, would be unjustified and not warranted by the facts. In none of the cases cited by respondent were the facts sufficiently parallel to those here present to constitute them contrary authority or to require their discussion.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

OPPER, dissenting: For the reason that it seems to me we are forsaking a rule that is by now firmly established, I with deference dissent. What petitioner was entitled to receive was a proprietary interest in his employer. This being a corporation, such an interest would commonly be spoken of as stock. What is comprehended, however, is the right to share in profits and losses, in management, and in assets upon liquidation. *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014, 1016. All this the petitioner received in the taxable year.

The certificates of stock would have been nothing but evidences of an ownership which it thus appears he already possessed. 11 Fletcher on Corporations, Permanent Ed., 55; *Kansas, Oklahoma & Gulf Railway Co.*, 42 B. T. A. 1128; *Kathryn Lammerding*, 40 B. T. A. 589; affd., 121 Fed. (2d) 80. A failure to receive such evidence is not the equivalent of a failure to receive the property which it represents. *Com-*

*missioner* v. *Scatena* (C. C. A., 9th Cir.), 85 Fed. (2d) 729. See also *Schneider* v. *Duffy* (U. S. Dist. Ct., Dist. N. J.), 43 Fed. (2d) 642.

This is not an instance of constructive receipt, for if petitioner received anything in 1937 he actually received the proprietary interest which is the subject of the tax. *Commissioner* v. *Scatena, supra.* If he did not receive that interest it is difficult to see how he could participate in the "affairs", in the profits, and particularly in the losses, of the corporation, as he and the corporation agreed that he should. The parties have stipulated that if he was in receipt of income in the taxable year the amount was 776 times $17.50. I believe he should be held to have received income in that amount.

SMITH agrees with this dissent.